**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | No. 1:16-cr-00163 |
| v. | : | |
| | : | (Judge Kane) |
| ALSHAQAH TARIQ POWELL, | : | |
| Defendant | : | |

**MEMORANDUM**

Before the Court is Defendant Alshaqah Tariq Powell's motion to suppress. (Doc. No. 38.) For the following reasons, the Court will deny Defendant's motion.

**I.      BACKGROUND**

On November 3, 2015, Trooper David Long of the Pennsylvania State Police was observing southbound traffic on Interstate 81 from the interstate median. (Tr. at 12: 1-2; 27: 5-12; 29: 2-4.) Trooper Long positioned his unmarked SUV perpendicular to the interstate to watch traffic pass from right to left through Dauphin County, Pennsylvania. (Tr. at 5: 16-21; 31: 2-10.) During this time, Defendant Powell drove past Trooper Long in a black Ford Taurus. (Tr. at 27: 13-22; 28: 2-4.) The Ford Taurus had tinted windows, displayed a temporary New Jersey tag, and was not speeding. (Tr. at 7: 16-17; 28: 2-12.)

However, as Defendant passed by his patrol car, Trooper Long observed Defendant wearing white headphones over his left ear. (Tr. at 9: 11-19; 31: 11-25.) Trooper Long could not tell whether Defendant wore headphones over his right ear. (Tr. at 9: 13-14; 32: 1-3.) Nonetheless, Trooper Long crossed into the interstate and activated his lights. (Tr. at 33: 10-21.) Defendant pulled over to the side of the interstate. (Tr. at 12: 1-2; 34: 3-4.) Trooper Long approached the passenger window and witnessed Defendant talking on the phone with headphones over both ears. (Tr. at 8: 20-21; 10: 4-8; 34: 14-17.) Trooper Long told Defendant

1

that driving with headphones over both ears violated Pennsylvania's vehicle code. (Tr. at 8: 20-25.) Defendant responded that he used the headphones' Bluetooth to talk on the phone. (See Tr. at 8: 22-23; 10: 4-11.) Trooper Long explained that he would not give him a citation for driving with headphones. (See Tr. at 38: 12-17.)

Trooper Long then proceeded to ask Defendant for his license and registration, whether he drove from New Jersey, and who owned the Ford Taurus. (Tr. at 11: 11-22; Government's Exhibit 2.) Defendant stated that he was driving from the New Jersey state line to visit his girlfriend who worked in York County, Pennsylvania. (Tr. at 11: 18-21; 12: 13-14; 18: 11-15.) Defendant first suggested that his girlfriend worked at a Wendy's in York County. Defendant later stated that the girlfriend worked at a Walmart and that they planned to meet at a Wendy's in York County for lunch. (Tr. at 18: 11-15.) As to the Ford Taurus' owner, Defendant initially suggested that his girlfriend owned the car, though he then clarified that the girlfriend's father owned the Ford Taurus. (Tr. at 18: 6-10, 16-18.)

Defendant provided Trooper Long with North Carolina identification, offered a New Jersey temporary registration card, and acknowledged that he was not licensed to drive. (Tr. at 12: 24-25; 13: 1-6; 20: 14-24.) Trooper Long returned to his SUV, messaged Trooper Travis Martin of the Pennsylvania State Police for backup, and started his inquiry into the vehicle's registration as well as Defendant's criminal history. (Tr. at 13: 7-12, 17-25; 14: 1-6, 11-18; 45: 5-7.) At this time, Trooper Long also detected a possible odor of marijuana from the vehicle. (Tr. at 14: 19-24; 35: 8-25.) However, Trooper Long did not initially confront Defendant with his suspicion and sought Trooper Martin's opinion as to the presence of marijuana because Trooper Long had a cold at the time. (Tr. at 15: 6-17; 35: 22-25.) Trooper Martin appeared on the scene approximately five minutes later. (Tr. at 52: 20-23.) Trooper Martin spoke with

Defendant, inquired into the purpose of his trip, and did not detect an order of marijuana in the Ford Taurus. (Tr. at 15: 19-25; 46: 25; 47: 1-2; 51: 17-19.)

Approximately twenty-four minutes into the stop, Trooper Long returned to Defendant and asked him to step out of the Ford Taurus. (Tr. at 16: 24-25; 17: 1-2; 40: 14-18; 43: 5-10.) A pat-down of Defendant's person revealed only a pack of "Indian cigarettes." (Tr. at 38: 18-25; 39: 1-17.) Again, Trooper Long asked Defendant questions about the purpose of his trip. (Tr. at 40: 19-22.) Trooper Long then asked Defendant for permission to search the Ford Taurus. (Tr. at 40: 23-25.) Trooper Long informed Defendant that his consent must be a "either a yes or a no," discussed the purpose of the search, and later explained how to fill out portions of the waiver form. (Government's Exhibit No. 2.) Defendant completed the consent form on the side of the road and outside of the view of Trooper Long's dashcam video. (Tr. at 17: 2-10; 48: 7-8; Government's Exhibit Nos 1, 2.)

Trooper Martin's search of the Ford Taurus's trunk revealed paper-wrapped packages of heroin and bricks of heroin. (Tr. at 21: 8-10, 18-19; 41: 21-25; 48: 16-24.) Trooper Martin discovered the heroin by unzipping a backpack located in the vehicle's trunk. (Tr. at 53: 9-15.) Trooper Martin pointed his Taser at Defendant upon seeing the narcotics and instructed Trooper Long to take Defendant into custody. (Tr. at 49: 5-7.) Trooper Martin then proceeded to take Defendant Powell into custody and read him his Miranda rights. (Tr. at 21: 22-23.)

On June 22, 2016, a grand jury returned a one-count indictment charging Defendant with possession with intent to distribute heroin. (Doc. No. 1.) Defendant entered a plea of not guilty on June 28, 2016 (Doc. No. 10), and Defendant filed the pending motion to suppress physical evidence on January 22, 2017 (Doc. No. 38). The pending motion has been fully briefed (Doc. Nos. 39, 45, 47), and a suppression hearing was conducted on May 17, 2017 (Doc. Nos. 49, 52).

At the suppression hearing, Troopers Long and Martin testified to the events surrounding Defendant's arrest on November 3, 2015. (Doc. No. 52.) Defendant's motion is ripe for disposition.

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects the public against "unreasonable searches and seizures." U.S. Const. Amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) (citing Katz v. United States, 389 U.S. 347, 356-57 (1967)). "Under the exception to the warrant requirement established in Terry, however, an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." United States v. Torres, 534 F.3d 207, 210 (3d Cir. 2008) (internal quotations omitted). "Any evidence obtained pursuant to an investigatory stop (also known as a 'Terry stop' or a 'stop and frisk') that does not meet this exception must be suppressed as 'fruit of the poisonous tree.'" Id. (quoting United States v. Brown, 448 F.3d 239, 244 (3d Cir. 2006)).

## III. DISCUSSION

In his motion to suppress, Defendant moves the Court to suppress the physical evidence obtained from the search of the Ford Taurus on November 3, 2015. (See Doc. No. 38.) Defendant submits four arguments in support of his motion to suppress: (1) Trooper Long lacked probable cause to effectuate the traffic stop; (2) the length and nature of the traffic stop was unreasonable; (3) Trooper Long lacked reasonable suspicion to warrant an investigative detention; and (4) Defendant's consent to the vehicle search was not voluntary. (Doc. No. 38.) The Court addresses each argument in turn.

### A.    Reasonable suspicion to conduct the traffic stop

First, Defendant maintains that Trooper Long did not have probable cause to conduct the

traffic stop or sufficient information to believe Defendant was driving with headphones on each

ear.  (Doc. No. 39 at 6; see Doc. No. 47 at 6.)  The Government responds that Trooper Long had

both reasonable suspicion and probable cause to stop Defendant's vehicle when he observed

Defendant wearing headphones.  (Doc. No. 45 at 12, 15-18.)  The Government reasons that the

"only way for an officer to determine whether an exception to the statute" prohibiting the use of

headphones applies "is to further investigate."  (Id. at 16-17.)

"The Fourth Amendment permits a traffic stop based on reasonable suspicion that a

traffic violation has occurred regardless of the officer's subjective motivations for making the

stop."  United States v. Byrd, No. 16-1509, 2017 WL 541405, at *2 (3d Cir. Feb. 10, 2017)

(citing United States v. Delfin–Colina, 464 F.3d 392, 397 (3d Cir. 2006); United States v.

Mosley, 454 F.3d 249, 252 (3d Cir. 2006)).  "[A] traffic stop will be deemed a reasonable

'seizure' when an objective review of the facts shows that an officer possessed specific,

articulable facts that an individual was violating a traffic law at the time of the stop.  In other

words, an officer need not be factually accurate in her belief that a traffic law had been violated

but, instead, need only produce facts establishing that she reasonably believed that a violation

had taken place."  United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006).

For example, in an unpublished opinion, United States v. Hall, the United States Court of

Appeals for the Third Circuit discussed, inter alia, whether an officer had reasonable suspicion to

stop a vehicle upon observing that the vehicle's tinted windows prevented a view inside its

interior.   270 F. App'x 123, 124-126 (3d Cir. 2008).  The relevant statute, 75 Pa. Cons. Stat.

Ann. § 4524(e), prohibits driving a vehicle with "any sun screening device or other material

which does not permit a person to see or view the inside of the vehicle . . . ." 75 Pa. Cons. Stat.

Ann. § 4524(e)(1). An exception to Section 4524(e) applies when the vehicle's tinted windows

were installed by the manufacturer. 75 Pa. Cons. Stat. Ann. § 4524(2)(i). The suspect in Hall

argued that the officers lacked reasonable suspicion because they could not know whether the

tint was applied by the manufacturer or after the vehicle's production. Hall, 270 F. App'x at

126. The Third Circuit rejected the argument, in relevant part, as follows:

> [T]he window tint on Hall's vehicle was sufficient to establish reasonable
> suspicion that Hall had violated a traffic ordinance. The officers' inability to
> determine at the time of the stop whether Hall's windows were tinted by the
> Yukon's manufacturer does not mean that the stop was unsupported by reasonable
> suspicion.

Id. The Third Circuit reasoned that the reasonable suspicion analysis deals "with probabilities"

and requires a reviewing court to view and weigh "the specific facts supporting an officer's

reasonable suspicion . . . [in terms] as understood by those versed in the field of law

enforcement." Id. (citing and quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

Here, Trooper Long testified that he observed Defendant wearing white headphones over

his left ear as he drove on Interstate 81. (Tr. at 9: 11-19; 31: 11-25.) The relevant statute, 75 Pa.

Cons. Stat. Ann. § 3314, provides that:

> (a) General rule.—No driver shall operate a vehicle while wearing or using one or
> more headphones or earphones.
>
> (b) Exception.—This section does not prohibit the use of hearing aids or other
> devices for improving the hearing of the driver, nor does it prohibit the use of a
> headset in conjunction with a cellular telephone that only provides sound through
> one ear and allows surrounding sounds to be heard with the other ear, nor does it
> prohibit the use of communication equipment by the driver of an emergency
> vehicle or by motorcycle operators complying with section 3525 (relating to
> protective equipment for motorcycle riders).

75 Pa. Cons. Stat. Ann. § 3314. Trooper Long's observation of Defendant wearing a headphone

over his left ear while driving provided a specific, articulable basis to conclude that Defendant

violated 75 Pa. Cons. Stat. Ann. § 3314.  See United States v. Delfin-Colina, 464 F.3d 392, 399

(3d Cir. 2006).  The Court is unpersuaded that Trooper Long's inability to confirm whether

Defendant wore the headphones over his right ear precludes a finding that reasonable suspicion

existed.  See Hall, 270 F. App'x at 126.  Therefore, the use of headphones over Defendant's left

ear was sufficient to establish the reasonable suspicion necessary to justify the traffic stop.  The

Court turns to Defendant's second and third arguments in support of his motion to suppress.

### B.    Scope and duration of the traffic stop

Defendant argues that the length and nature of the traffic stop was unreasonable as well

as disproportionate to the time needed to resolve the vehicle code violation.  (Doc. No. 39 at 7-

9.)  Defendant stresses that the traffic stop should have concluded once Trooper Long stated he

was not issuing a citation and once he finished the background check.  (Id. at 8.)  Defendant also

contends that his investigative detention was not warranted.  (Id. at 9.)  The Government argues

that the extended duration of the traffic stop and Defendant's investigative detention were

warranted given that Defendant lacked a driver's license, the vehicle did not belong to

Defendant, Defendant appeared nervous, and Defendant offered inconsistent answers to the

troopers' questions.  (Doc. No. 45 at 18.)

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by

the seizure's "mission"—to address the traffic violation that warranted the stop . . . and attend to

related safety concerns."  Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015) (internal

citations omitted).  "Authority for the seizure thus ends when tasks tied to the traffic infraction

are—or reasonably should have been—completed."  Id. (citing United States v. Sharpe, 470 U.S.

675, 686 (1985)).  However, "an officer who develops a reasonable, articulable suspicion of

criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain

the vehicle and its occupants for further investigation." United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) (citing United States v. Johnson, 285 F.3d 744, 749 (8th Cir. 2002)). This exception to the rule "requires independent suspicion that some other crime is afoot." United States v. Mosley, 454 F.3d 249, 255 n.9 (3d Cir. 2006).

Here, the Court finds that Trooper Long had independent, articulable suspicion of illegal activity sufficient to extend the traffic stop. First, Defendant made inconsistent statements concerning the destination of his trip and the owner of the Ford Taurus. (Tr. at 11: 18-21; 12: 13-14; 18: 6-18.) Defendant appeared nervous even after being told that he would not receive a citation and, at one point, Trooper Long witnessed his hands shaking. (Tr. at 19: 4-12; 34: 20-22.) Having witnessed this behavior, Trooper Long developed reasonable, articulable suspicion to extend the traffic stop by asking Defendant questions about his purpose in Pennsylvania. See Givan, 320 F.3d at 458 ("[Q]uestions relating to a driver's travel plans ordinarily fall within the scope of a traffic stop.") (citation omitted).

Second, Defendant later acknowledged that he was not licensed to drive and Trooper Long testified that believed he may have smelled an odor of marijuana in the vehicle. See Morgan v. Borough of Fanwood, No. 16-3113, 2017 WL 815220, at *5 (3d Cir. Mar. 1, 2017) ("[T]hat [an officer] was not certain that he smelled marijuana [] does not defeat reasonable suspicion . . . ."). Trooper Long also testified that Defendant's conflicting statements as to the Ford Taurus' owner "stuck out to" him considering that the vehicle was brand new and its registration was only four-days old. (Tr. at 7: 18-21; 20: 14-24.) Therefore, based on Defendant's inconsistent statements, acknowledgment of not having a valid driver's license, and the uncertainty surrounding the Ford Taurus' owner, Trooper Long was justified in further

investigating Defendant's criminal history and the registration status of the Ford Taurus. See United States v. Banks, 2011 U.S. Dist. LEXIS 123082, at *17 (M.D. Pa. Oct. 25, 2011).

Third, Trooper Long's request that Defendant step outside of the Ford Taurus did not impermissibly extend the traffic stop. The United States Supreme Court has held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." Maryland v. Wilson, 519 U.S. 408, 415 (1997). Therefore, viewing Trooper Long's conduct under the totality of the circumstances, the Court cannot say that Trooper Long was not justified in extending the stop by questing Defendant about the purpose of his trip, calling Trooper Martin for backup, running a criminal background check, investigating the Ford Taurus' registration status, and later requesting Defendant to step out of the vehicle. At different stages in his encounter with Defendant, Trooper Long had received conflicting accounts about the vehicle and Defendant's trip, detected a possible odor of marijuana in the vehicle, and determined that Defendant was driving without a valid driver's license.

Thus, the Court finds that Trooper Long's decision to extend the traffic stop was reasonable and supported by independent, articulable suspicion that "some other crime" was afoot. Mosley, 454 F.3d at 255 n.9.

### C. Voluntariness of Defendant's consent

Finally, Defendant argues that he did not voluntarily consent to the search of the vehicle. (Doc. No. 39 at 10, 12.) Defendant reasons that his consent was not the product of "free will" because he was detained beyond the scope of the traffic stop, was removed from the vehicle, and was not free to leave to police encounter. (Id. at 12.) The Government responds that the elongated duration of the stop reflected the time needed to investigate Defendant's "fanciful" narratives and check Defendant against law enforcement databases. (Doc. No. 45 at 26-27.)

9

"A voluntarily given consent is an exception to the search warrant requirement and is therefore constitutionally permissible." United States v. Velasquez, 885 F.2d 1076, 1081 (3d Cir. 1989) (citation omitted). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). "Certain factors that courts consider in determining whether confessions were voluntary, such as the age of the accused, his education, his intelligence, whether he was advised of his constitutional rights, and whether the questioning was repeated and prolonged, are relevant to our examination." United States v. Kim, 27 F.3d 947, 955 (3d Cir. 1994) (internal citation omitted) (citing Velasquez, 885 F.2d at 1081-83).

Here, Trooper Martin testified that Defendant gave Trooper Long consent to search the Ford Taurus, and Trooper Long testified that Defendant completed a form that provided consent to search the vehicle. (Tr. at 17: 3-10; 48: 2-8.) That form – the Pennsylvania State Police waiver of rights and consent to search form – has been admitted into evidence without objection. (Tr. at 17: 14-23.) Furthermore, a review of the dashcam video reveals no concerns about Defendant's age, education, or intelligence from which this Court could infer that his consent was not given voluntarily or intelligently. (Government's Exhibit No. 2.) Therefore, the Court is persuaded that the Government has satisfied its burden of showing by a preponderance of the evidence that Defendant's consent was voluntarily given. See Velasquez, 885 F.2d at 1081 (citations omitted).

## IV. CONCLUSION

For the reasons stated above, the Court will deny Defendant's motion to suppress physical evidence. (Doc. No. 38.) An Order consistent with this Memorandum follows.